**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
RAJIN CHARLES,

                         Petitioner,

             -against-

BRIAN FISCHER, Superintendent, Sing Sing
Correctional Facility,

                      Respondent.
-------------------------------------------------------X

<u>**MEMORANDUM OF**</u>
<u>**DECISION AND ORDER**</u>
04 CV 5042 (ADS)

**<u>APPEARANCES</u>:**

**RAJIN CHARLES**
<u>Pro Se</u> Petitioner
99A4409
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562-5442

**KATHLEEN M. RICE, DISTRICT ATTORNEY**
**COUNTY OF NASSAU**
Attorney for the Respondents
262 Old Country Road
Mineola, New York 11501
      By:    Douglas R. Noll, Assistant District Attorney

**SPATT, District J.**

        Rajin Charles (the "petitioner") petitions this Court for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is

denied.

## I.      BACKGROUND

The petitioner seeks to vacate a May 14, 1999 judgment of conviction and sentence, which were entered after a jury convicted him of two counts of Attempted Murder in the Second Degree; two counts of Assault in the First Degree; one count of Criminal Possession of a Weapon in the Third degree; and one count of Criminal Possession of a Weapon in the Second Degree.

### A.      Facts

The charges for which the petitioner was convicted arose out of the shooting of two individuals on Middle Neck Road, in Great Neck, New York.  On May 8, 1998, at approximately 9:45 p.m., Jamalle Moody, Suresh Persuad, Craig Cohn, Adam Cohn, and the twenty-two-year-old petitioner were walking on Middle Neck Road near Great Neck Road in Great Neck, New York.  As the group was walking, they encountered David Vacquez and his cousin Wandy Leonardo.  Vacquez and Adam Cohn bumped into each other, causing Vacquez to bump into Leonardo.  The groups exchanged words, and someone in the petitioner's group drew a gun and shot Vacquez in the right arm and Leonardo in the abdomen.  At the trial, Vaquez, Leonardo, and both Cohn brothers identified the petitioner as the shooter.

The defendant testified in his own behalf.  According to the petitioner, it was Leonardo and Vacquez that bumped into Adam Cohn.  During the ensuing argument, Leonardo took off his jacket and stated "this is his fucking town, what are you going

to do about it."  According to the petitioner, in response to Leonardo, Adam Cohn pulled out the gun and fired it in Leonardo's direction.

On December 16, 1998, the jury returned a verdict of guilty on two counts of Attempted Murder in the Second Degree; two counts of Assault in the First Degree; one count of Criminal Possession of a Weapon in the Third degree; and one count of Criminal Possession of a Weapon in the Second Degree.

**B.      Procedural History**

On May 14, 1999, the Honorable Paul E. Kowtna of the County Court for the County of Nassau sentenced the petitioner to two consecutive terms of twelve and one-half to twenty-five years for the Attempted Murder convictions; two consecutive terms of seven and one-half to fifteen years under the Assault count, to run concurrent with the Attempted Murder sentences; seven and one-half to fifteen years for Criminal Possession of a Weapon in the Third Degree, concurrent with the other sentences; and three and one-half to seven years for Criminal Possession of a Weapon in the Second Degree, also concurrent with the other sentences.  The trial court also ordered the petitioner to pay restitution in the amount of $26,072.56.  On October 20, 2003, the New York Supreme Court, Appellate Division, Second Department, affirmed the conviction, People v. Charles, 309 A.D.2d 873, 766 N.Y.S.2d 42 (2d Dep't 2003), and on February 14, 2004,  the New York Court of Appeals denied leave to appeal, People v. Charles, 1 N.Y.3d 625, 808 N.E.2d 1283, 777 N.Y.S.2d 24 (2004).

On April 18, 2002, approximately three years after the date of his conviction and sentence but while his direct appeal to the Appellate Division was pending, the petitioner made a motion to vacate his judgment of conviction pursuant to Section 440 of New York's Criminal Procedure Law. In an order dated July 23, 2002, the Honorable Frank A. Gulotta, Jr. of the Nassau County Court denied the petitioner's Section 440 motion. On October 2, 2002, the Appellate Division denied leave to appeal the denial of the Section 440 motion.

On November 17, 2004, Charles filed this petition, raising four arguments in support of habeas corpus relief: (1) ineffective assistance of counsel; (2) he was deprived of a fair trial by introduction of evidence of an uncharged crime; (3) his sentence was excessive; (4) the cumulative effect of all of the errors resulted in the denial of a fair trial.

## II.   DISCUSSION

Initially, the Court notes that it is mindful that the petitioner is proceeding <u>pro se</u> and that his submissions should be liberally construed in his favor. <u>See</u> <u>Chang v. United States</u>, 250 F.3d 79, 86, n.2 (2d Cir. 2001).

### A.   Standard of Review

The Antiterrorism and Effective Death Penalty Act (the "AEDPA") provides that a federal habeas court may grant habeas relief to state prisoners with respect to

any claim that was adjudicated on the merits in state court proceedings only if the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir. 2005) (discussing the federal habeas review standard set forth in Section 2254). It is well-settled that a state court's findings of fact are entitled to a "presumption of correctness" that the petitioner in question must rebut by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state-court decision is 'contrary' to clearly established federal law within the meaning of § 2254(d)(1) if it is 'diametrically different' from, 'opposite in character or nature' to, or 'mutually opposed' to the relevant Supreme Court precedent." Henry v. Poole, 409 F.3d 48, 68 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established Federal law if the state court applies Federal law to the facts of the case in an objectively unreasonable manner. See Brown v. Payton, 544 U.S. 133, 125 S. Ct. 1432, 1439, 161 L. Ed. 2d 334 (2005) (citing Williams, 529 U.S.

at 405, 120 S. Ct. 1495); Serrano v. Fischer, 412 F.3d 292, 296 (2d Cir. 2005) (citations omitted). "[I]it is well-established in [this] Circuit that the 'objectively unreasonable' standard of § 2254(d)(1) means that [a] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." Rosa v. McCray, 396 F.3d 210, 219 (2d Cir. 2005) (citing Cotto v. Herbert, 331 F.3d 217, 248 (2d Cir. 2003)).

Under the AEDPA, a court does not decide "whether the state court correctly interpreted the doctrine of federal law on which the claim is predicated, but rather whether the state court's interpretation was unreasonable in light of the holdings of the United States Supreme Court at the time." Brown v. Greiner, 409 F.3d 523, 533 (2d Cir. 2005); see also Williams, 529 U.S. at 405, 120 S. Ct. at 1495.

It is well-settled that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L. Ed. 2d 606 (1990)). In this regard, the United States Supreme Court opined that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). On the contrary, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68, 112 S. Ct. at 480 (citations omitted).

**B.      As to the Petitioner's Claims**

Considering the petitioner's pro se status and the lack of argument contained in his habeas petition, the Court will consider the petitioner's arguments as they were raised by his appellate counsel in his briefs filed with the Appellate Division on the direct appeal and the papers that he submitted in support if his Section 440 motion.

**1.      Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel, the petitioner must demonstrate: (1) that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that he was prejudiced by his counsel's deficient performance.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984).  In applying the above two-prong test, "judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689, 104 S. Ct. at 2065.  The relevant inquiry focuses "on the fundamental fairness of the proceeding whose results are being challenged."  Id. at 696, 104 S. Ct. at 2069.  "The court's central concern is not with 'grading counsel's performance' but with discerning 'whether despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just

results.' " United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting

Strickland, 466 U.S. at 696-97, 104 S. Ct. at 2069).

      The burden is on the petitioner to "overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.' "

Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. Indeed, as the Supreme Court has

noted, "there are countless ways to provide effective assistance in any given case.

Even the best criminal defense attorneys would not defend a particular client in the

same way." Id.

      With respect to the second prong, the petitioner can only establish prejudice if

there is a "reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Billy-Eko v. United States, 8

F.3d 111, 114 (2d Cir. 1993), abrogated on other grounds by Massaro v. United

States, 538 U.S. 500, 23 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

      At the trial, the petitioner was represented by Alan E. Kudisch, Esq. The

petitioner argues that his trial attorney was ineffective for several reasons: (1) he

failed to object to "inadmissable and extremely damaging" evidence; (2) he elicited

prejudicial testimony from prosecution witnesses; (3) he failed to object to improper

remarks at summation; (4) he was generally unprepared at trial; and (5) he failed to

advise the petitioner of a plea offer of three to six years.

### a. As to the Introduction of Inadmissible Evidence

Adam Cohn testified that after the shooting he first ran to a restaurant.  When Cohn left the restaurant, he encountered the petitioner.  The petitioner suggested to him that they take a bus, which they rode to "a marine academy."  Adam  Cohn and the petitioner then rode the bus back to the Great Neck train station.

> Q.  While you were with [the petitioner] on the bus did you talk about what just happened?
>
> A.  Yeah.
>
> Q.  What did you talk about?
>
> A.  He said if my brother rats him out, Craig, that he would kill him.
>
> Q.  And what do you mean by that?
>
> MR. KUDISCH:  Objection.
>
> THE COURT:  Sustained.
>
> Q.  Did you make a response?  Did you say anything back?
>
> A.  No.

(Tr. at 337-43).  The petitioner argues that Adam Cohn's testimony regarding this threat against Craig Cohn constituted inadmissible evidence of an uncharged crime, and that his trial counsel was ineffective for failing to object.

This testimony is not clearly inadmissible.  Courts in New York will admit evidence of uncharged crimes as background material and to "complete the narrative

9

of events." <u>People v. Till</u>, 87 N.Y.2d 835, 836-37, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995) ("[S]uch evidence may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode' ") (citations omitted); <u>see also</u> <u>Moses v. Senkowski</u>, No. 01 CV 4423(SJ), 2004 WL 1242511, at *10 (E.D.N.Y. May 28, 2004) ("Even if the prior shootings had been connected in some way with the petitioner, they could have been admissible under New York law, which allows testimony concerning a defendant's uncharged bad acts where that testimony is necessary to complete the witness's narrative of events.").

In opposition to this habeas petition the respondent argues that the testimony was admissible because, among other reasons, it is evidence of the petitioner's consciousness of guilt. Courts will admit evidence of a defendant's conduct that reveals a guilty mind including evidence of coercion and harassment of a witness. <u>See</u> <u>Herrera v. Artuz</u>, 171 F. Supp. 2d 146, 149-50 (S.D.N.Y. 2001) (citing <u>People v. Bennett</u>, 79 N.Y.2d 464, 583 N.Y.S.2d 825, 593 N.E.2d 279, 283 (1992); <u>People v. Plummer</u>, 36 N.Y.2d 161, 365 N.Y.S.2d 842, 325 N.E.2d 161 (1975) (holding that evidence of defendant's threatening behavior toward a witness was admissible)). Thus, the Court holds that the petitioner was not prejudiced by trial counsel's failure to object to Adam Cohn's testimony that the petitioner threatened Craig Cohn.

In any event, an attorney's failure to object generally is considered a strategic decision. It is possible that trial counsel did not want to draw attention to the testimony. See Quinones v. Miller, 2003 WL 21276429, at *50 n. 78 (S.D.N.Y. June 3, 2003) (citation omitted); see also United States v. Grunberger, 431 F.2d 1062, 1069 (2d Cir.1970) ("[I]t is understandable that a defense counsel may wish to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it [through an objection].").  Trial counsel's failure to object to testimony regarding a threat by the petitioner was not ineffective assistance of counsel.

### b.    As to the Prejudicial Testimony

Next, the petitioner argues that trial counsel was ineffective for eliciting testimony that the petitioner was identified from a photo array by Adam Cohn, Craig Cohn, Leonardo, and Vacquez.  (Tr. at 516-22; 314-25; 792-94; 851-57).  On cross-examination, Adam Cohn testified as follows:

Q.    When you went to the precinct, what happened?  I am talking about the morning of May 10th.

A.    I think they showed me photos.

• • •

Q.    When [the detective] showed you the photographs did he tell you he wanted you to identify [the petitioner]?

A.    Yeah.

Q.    Those were his words?

A.    I don't know that, exactly what he said.  He said – I don't know.

Q.    He said pick – did he say pick out [the petitioner]?

A.    Something like that.

(Tr. at 517-19).

Craig Cohn gave the following testimony:

Q.    Let's get back to the following night.  You are still awake when the police arrived at your house at two o'clock in the morning, 2:15?

A.    Yeah.

. . .

Q.    What did you hear when your mom or dad answered the door?

A.    You know, I went down there, and he says that –

Q.    Who is he?

A.    One of the cops.  The officers said that they had [the petitioner] in custody and they wanted us to identify him.

. . .

Q.    You told us the police officer said that they want you to identify [the petitioner]; is that correct?

A.    Yes, and he told us to go to the precinct.

. . .

Q.    Let's get back.  You are at the precinct the night of May 10th.

A. Yes.

Q. Are you alone with Detective Betts?

A. Yes.

Q. He shows you something?

A. Yes.

Q. What is it that he shows you?

A. He shows six individuals who fit the description and one of them was [the petitioner].

Q. What does he tell you before he shows you them?

A. He goes – well, I don't know exactly what he said, but I think he said, you know, take your time and identify which one is [the petitioner], and so I did.

(Tr. at 314-25).

Wandy Leonardo testified as follows:

Q. You spoke to Detective Betts. Did he show you anything?

A. Yes.

Q. What did he show you?

A. Picture.

Q. What kind of a picture?

A. Actually it was a sheet with several pictures on it.

• • •

13

Q.    When Detective Betts was showing you that document, were you aware that Mr. Charles had been arrested?

A.    No.

Q.    Did he tell you that he wanted you to pick out someone from the document?

A.    No.

Q.    What did he say to you?

A.    He called earlier during the day and asked me if I would be able to identify this young man from a group of pictures.

Q.    Did he tell you someone had been arrested?

A.    No.

Q.    Did he tell you how many pictures he was going to bring?

A.    No, sir.

(Tr. at 851-54).

Under New York law, the prosecution may not present evidence of a pretrial photographic identification of a defendant.  N.Y. Crim. Proc. Law § 60.30; People v. Griffin, 29 N.Y.2d 91, 93, 323 N.Y.S.2d 964, 965, 272 N.E.2d 477 (1971) ("The rule is settled in this State that a witness may not testify to an extrajudicial identification of a photograph of the defendant.") (citation omitted); People v. Mosely, 296 A.D.2d 595, 596, 744 N.Y.S.2d 577, 579 (3d Dep't 2002) ("It is well settled that the prosecution may not present testimony regarding a pretrial out-of-court photographic identification of a defendant because such evidence improperly bolsters the witness's

testimony. This important prohibition is lifted only 'in rare instances' where conduct by the defendant at the trial opens the door for such testimony.") (citations omitted).

Here, it is apparent that the defendant's counsel intentionally opened the door to this evidence in an effort to bolster his theory of the case. The defense argued that the petitioner's arrest was the result of a misidentification, and that it was actually Adam Cohn who pulled the trigger. During his closing argument, defense counsel made the following argument:

> There is a substantial amount of conflict between the witnesses and between the police officers and everybody else that you have heard here, including the defendant, and I think when you look at it objectively and you try to put it together, you are going to come to a very simple conclusion, that the district attorney has not convinced you beyond a reasonable doubt that Rajin Charles and no one else fired a gun. . . .

> So the photograph is shown to Adam Cohn and Craig Cohn, this photo display. Why? Adam Cohn and Craig Cohn can both identify the defendant. They know him from before. This is not a stranger situation where you are trying to pick out the right guy. Everybody knew when they saw this photo spread who the defendant was . . . .

> They are asked specifically, pick out [the petitioner]. That's the question they were asked, and both of them told you that. Not pick out the guy who was with you, pick out [the petitioner]. Not show us the guy who shot Wandy Leonardo, or show us the guy who shot David Vacquez. No, pick out [the petitioner].

(Tr. at 980, 1001).

The victims, Vacquez and Leonardo, were shown a different photo array than the Cohn brothers. Having introduced both photo arrays into evidence, defense

counsel used the differences between the two collections to argue that the one shown

to the victims was suggestive and intended to produce an identification of the

petitioner.

> Ladies and gentlemen, when you look at [the photos shown to Vacquez and Leonardo] for the first time, for the jury, if you didn't know where the defendant's photograph was, I'm telling you right now before I even show it to you, you are going to know where he is. Spot number two, bigger than everybody else, faded. Different. Extremely different.

> If you saw this, your attention, the way it's drawn, is immediately drawn to photograph number two.

(Tr. at 1001-02).

In the Court's view, it was obvious that, although the defendant could have

precluded the prosecution from introducing evidence of the photo array identifications,

defense counsel's repeated questioning regarding this subject were part of a deliberate

strategy intended to cast doubt on the identification of the petitioner as the shooter and

the prosecution's ability to prove beyond a reasonable doubt that the petitioner held

the gun. It is not the Court's role in a habeas proceeding to second-guess the trial

counsel's tactics. Although it was unsuccessful, the introduction of evidence of the

prior photographic array identification of the petitioner by four trial witnesses, two of

whom previously knew him, was not ineffective assistance of counsel.

The Court reaches the same conclusion with regard to the fact that the

defendant's counsel elicited testimony during the cross-examination of Detective Betts

that he showed a photo array to Leonardo, Vacquez, Adam Cohn, and Craig Cohn.

Although the prosecution would have been barred from introducing this evidence to

bolster the witness identifications, People v. Holt, 67 N.Y.2d 819, 492 N.E.2d 769,

501 N.Y.S.2d 641 (1986), the defense's use of this testimony in the presentation of its

misidentification defense was strategy, not ineffective assistance of counsel.

### c.    As to the Prosecutor's Summation

Next, the petitioner argues that his counsel was ineffective for failing to object

to certain remarks made by the prosecutor during closing argument.  In attempting to

discredit the defense arguments that the petitioner was punched in the face by an

officer and that the police were falsely targeting him, the prosecutor stated:

> If the police are going to go so far and be so low as to physically
> abuse this defendant, commit perjury on the stand to concoct a case
> against somebody who is totally innocent, do you think they would
> come before you with a statement that they did.  You don't think
> there would be a statement from the defendant indicating yes, I shot
> him, I used a gun, this is why I did it, some explanation with details.

(Tr. at 1041).  The petitioner casts these remarks as an attempt to vouch for the

credibility of the police officers who testified for the prosecution.

Assuming that the statement quoted above was an attempt to bolster the

credibility of the State's witnesses, such statements were not improper in this case.

While it is generally inappropriate for the State to bolster the credibility of its own

witnesses, the prosecution made this argument in response to a defendant's attack on

the credibility of the State's witnesses.  See Gonzalez v. Sullivan, 934 F.2d 419, 424

17

(2d Cir. 1991) ("Yet, to the extent that [the prosecutor] argued that Malavet had no reason to lie, the defense's summation invited this response by arguing that Malavet had testified only to impress the other key prosecution witness."); see also Li v. Phillips, 358 F. Supp. 2d 135, 144 (E.D.N.Y. 2005); Jones v. Spitzer, No. 01 Civ. 9754 HBGWG, 2003 WL 1563780, at *34 (S.D.N.Y. Mar. 26, 2003).

In his closing arguments, the defense counsel characterized testimony by one of the officers who testified for the prosecution as a "cock and bull story" and "a bunch of malarkey." (Tr. at 996). The prosecutor was permitted to respond to these remarks. Thus, the prosecutor's comments quoted above were not improper, and the petitioner's trial counsel's failure to object was not ineffective assistance of counsel.

### d. As to Counsel's Preparation

In addition to those aspects of trial counsel's performance discussed above, the petitioner also claims that his lawyer was "generally unprepared for trial." However, the only additional instances of counsel's alleged unpreparedness, other than those discussed above, was that he did not deliver an opening statement.

Under New York law a defendant may, but is not required, to deliver an opening statement to the jury. N.Y. Crim. Proc. Law § 260.30(4); cf. Kendrick v. Greiner, 296 F. Supp. 2d 348, 365 (E.D.N.Y. 2003) ("The decision whether or not to give an opening statement is strategic in nature."). The petitioner does not identify

any reason why his counsel's decision to waive an opening was not a legitimate and reasonable trial strategy.

On the other hand, a review of the trial transcript indicates that the petitioner's trial lawyer was prepared for trial. Trial counsel developed and presented his theory of misidentification. In opposition to the petition, the respondent directs the Court to numerous instances at the trial where the petitioner's trial counsel made extensive use of discovery material, showed comprehensive knowledge of the facts and the circumstances of the crime. In sum, the trial transcript belies the petitioner's claim that his lawyer was unprepared. In this regard, trial counsel was not ineffective.

### e. As to the Plea Offer

Finally, the petitioner argues that his trial counsel was ineffective because he failed to advise him of a plea offer of three to six years imprisonment. The petitioner first raised this argument in his Section 440 motion. Judge Frank A. Gulotta, Jr. of the Nassau County Court rejected the petitioner's argument related to the purported plea offer, primarily on the basis of N.Y. Crim. Proc. Law § 440.30(4). This section of the CPL provides that a court may deny a Section 440 motion to vacate a judgment of conviction if "an allegation of fact essential to support the motion . . . is made solely by the defendant and is unsupported by any other affidavit or evidence" and if there is no "reasonable probability that such allegation is true." N.Y. Crim. Proc. Law § 440.30(4). Judge Gullota found the following:

In the instant matter, defendant's allegations that his trial counsel failed to advise him of an alleged plea offer with a sentence commitment of 3-6 years is unsupported by any evidence other than defendant's allegation made now - almost four years after his conviction. Indeed, he even fails to annex an affidavit of his mother who allegedly could verify this allegation. Also missing is any statement from his trial counsel corroborating this allegation. Defendant should have submitted such affidavit or provided a reason for its absence. . . .

Further, there is no reasonable possibility that defendant's assertions are true. Defendant's own statements are contradictory. In his own affidavit, defendant states: "I asked Mr. Kudisch [his trial attorney] if it would be possible to obtain a sentence of 3 to 6 years on this case, to be run concurrently with the sentence being offered on the Queens County case. Mr. Kudisch replied that the Nassau County District Attorney was willing to offer a 3 to 6 year sentence on a plea" (defendant's affidavit at para 6). Almost immediately thereafter, defendant contradicts himself and states: I am not sure if the Nassau County District Attorney actually proposed a plea offer of 3 to 6 years of incarceration in this case, concurrent with the sentence in another county or otherwise, since Mr. Kudisch never advised me if such an offer was actually available (defendant's affidavit at para. 9). Clearly, such inconsistent pleadings entitle defendant to no relief and casts severe doubt on the remainder of defendant's assertions.

Respondent's Ex. 1 (July 23, 2002 Order of Hon. Frank A. Gulotta, Jr.).

There is some uncertainty as to whether Judge Gulotta's decision resting on

N.Y. Crim. Proc. Law § 440.30(4) is procedural in nature, or on the merits. Compare

Williams v. McGinnis, No. 04 CV 1005, 2006 WL 1317041, at *10 (E.D.N.Y. May

15, 2006) (holding that state court relied on a procedural rule in denying the

petitioner's motion to vacate based on § 440.30(4)(b)); Marsh v. Ricks, No. 02 Civ.

3449, 2003 WL 145564, at *7 (S.D.N.Y. Jan, 17, 2003) ("[B]ecause the denial of a

motion to vacate a conviction pursuant to Crim. Pro. Law § 440.30(4) constitutes

reliance on an independent and adequate state ground . . . our review of petitioner's

claim is barred by this procedural default absent a showing of a valid excuse.") (citing

Roberts v. Scully, 875 F. Supp. 182, 193 n.7 (S.D.N.Y. 2001)), with Faulkenson v.

Conway, No. 04-CV-0080, 2007 WL 160926, at *9 (E.D.N.Y. Jan. 10, 2007)

("Because § 440.30(4) applies, by its own terms, only when a trial court denies a

§ 440.10 motion '[u]pon considering the merits,' a denial based on § 440.30(4) is a

decision on the merits which does not serve as a procedural bar to a federal habeas

claim.") (citations omitted); Gonzalez-Pena v. Herbert, 369 F. Supp. 2d 376, 389

(W.D.N.Y. 2005) (holding that a determination under Section 440.30 is a merits-based

decision, not a procedural bar).

      If Judge Gulotta's rejection of the petitioner's argument based on Section

440.30(4) is procedural in nature, as some Courts have held, then Judge Gullota's

reliance on this ground to deny this aspect of the Section 440 motion constitutes an

adequate and independent state ground for this Court to reject the petitioner's

argument.  Thus, the petitioner is procedurally barred from arguing ineffective

assistance based on the alleged plea offer.  The petitioner has not shown the requisite

"cause and prejudice" or a fundamental miscarriage of justice necessary for this Court

to excuse his procedural bar and review his claim.  See Dretke v. Haley, 541 U.S. 386,

393, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004) (citation omitted); <u>Doe v. Menefee</u>, 391 F.3d 147, 160-63 (2d Cir. 2004).

Even considering Justice Gullota's decision as a determination on the merits, this Court would reject the petitioner's ineffective assistance claim that his counsel failed to relate a plea offer to him. Pursuant to 28 U.S.C. 2254(e)(1), the petitioner must rebut Judge Gulotta's factual finding that there is no likelihood that the prosecution offered him a plea deal of three to six years in prison by clear and convincing evidence. The petitioner failed to meet this highly deferential standard.

The only evidence before the Nassau County Court regarding the failure of petitioner's counsel to apprise him of a plea offer of three to six years was the petitioner's own allegation, which was made almost three years after his conviction. As Judge Gulotta found, the petitioner's allegations are inconsistent. In his affidavit, the petitioner states that he asked his trial attorney

> if it would be possible to obtain a sentence of 3 to 6 years on this case, to be run concurrently with the sentence being offered on the Queens County case. Mr. Kudisch replied that the Nassau County District Attorney was willing to offer a 3 to 6 year sentence on a plea.

However, the petitioner then stated that he was "not sure if the Nassau County District Attorney actually proposed a plea offer of 3 to 6 years" and that his trial counsel never advised him if such an offer was actually available.

In addition, in opposition to the petitioner's motion to vacate his conviction and sentence, an Assistant District Attorney submitted an affirmation stating that there

was no record of any plea offer in the petitioner's file at the District Attorney's office. Accordingly, the petitioner's claim for habeas corpus relief on the basis of ineffective assistance is denied.

### 2. As to the Testimony Concerning an Uncharged Offense

The petitioner's second ground for habeas relief is that the trial court deprived him of a fair trial by allowing the introduction of evidence of an uncharged crime. As discussed above in the analysis of the petitioner's ineffective assistance of counsel claim, Adam Cohn testified at the trial that the petitioner told him he would kill Craig Cohn if Craig "ratted him out." (Tr. at 337-343).

Ruling on the petitioner's direct appeal, the Appellate Division, Second Department stated that "[t]he defendant's contention that the trial court erred in admitting testimony that he threatened a witness is unpreserved for appellate review and, in any event, is without merit." People v. Charles, 309 A.D.2d 873, 766 N.Y.S.2d 42 (2d Dep't 2003) (citations omitted). The Court assumes the Appellate Division found this argument unpreserved for appellate review because the petitioner did not contemporaneously object to the question or answer regarding the threat petitioner made about Craig Cohn. See N.Y. Crim. Proc. Law § 470.05(2); Simpson v. Portuondo, 01-CV-8744, 2002 WL 31045862, at *4 (S.D.N.Y. June 4, 2002) ("New York's contemporaneous objection rule is firmly established and regularly followed by state courts, as the Second Circuit has long recognized").

"[W]hen a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 & n.4 (2d Cir. 2000) ("where a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved.") (citing Glenn v. Bartlett, 98 F.3d 721, 724-25 (2d Cir. 1996); Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990)); Friskco v. Woods, No. 06-CV-5396 (NGG)(RER), 2007 WL 2366103, at *7 (E.D.N.Y. Aug. 16, 2007); Eugene v. Payant, No. 06-CV-6024 (SJF), 2007 WL 2116375, *4 (E.D.N.Y. July 13, 2007). Thus, the Court finds that the petitioner's claim that the trial Court erred in permitted testimony about a threat he made to Adam Cohn is procedurally barred.  The petitioner has not shown the requisite "cause and prejudice" or a fundamental miscarriage of justice necessary for this Court to excuse his procedural bar and review his claim.  See Dretke, 541 U.S. at 393, 124 S. Ct. 1847 (citation omitted); Menefee, 391 F.3d at 160-63.   Accordingly, the petition for habeas relief on this ground is denied.

### 3.        As to an Excessive Sentence

The petitioner argues that his sentence was unduly harsh and excessive because "as a first offender . . . as an absolute minimum, all of the sentences imposed should have run concurrently."  However, "there is 'no constitutionally cognizable right to concurrent, rather than consecutive, sentences.' "  United States v. McLean, 287 F.3d

127, 136-37 (2d Cir. 2002) (citing United States v. White, 240 F.3d 127, 135 (2d Cir. 2001)).  Thus, "federal habeas courts have squarely held that claims regarding the imposition of consecutive sentences are purely a matter of state law and are not cognizable on habeas review."  Figueroa v. Grenier, No. 02 Civ.5444, 2005 WL 249001, at *15 (S.D.N.Y. Feb. 3, 2005); see also Davis v. Herbert, No. 02-CV-04908, 2003 WL 23185747, at *15 (E.D.N.Y. Oct. 24, 2003) ("Whether the sentence could be consecutive was a matter of state law and raises no Constitutional issue."); Heath v. Hoke, No. 88-770E, 1989 WL 153759, at *3 (W.D.N.Y. Dec. 7, 1989) ("[A] state court's interpretation of state law on concurrent and consecutive sentences is not a question of federal constitutional dimension cognizable in a federal habeas corpus proceeding.").  Also, the petitioner's claim that his sentence was unduly harsh is not reviewable in this habeas proceeding because the sentences fall within the range prescribed by state law.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Pena v. Rivera, No. 05 Civ. 3109(LTS)(FM), 2006 WL 2265078, at *8 (S.D.N.Y. July 31, 2006); Egbert v. David, Nos. 02-CV-503, 03-MISC-0066, 2003 WL 23199557, at *6 (E.D.N.Y. Dec. 11, 2003) (citing Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977)).

On the merits, this claim would be denied.  Under New York State law, a court must impose sentences to run concurrently when "two or more offenses are committed through a single act or omission."  N.Y. Penal Law § 70.25(2).  The firing of multiple

gunshots at different victims constitutes separate and distinct acts for the purpose of the imposition of consecutive sentences.  See Grimes v. Goord, 371 F. Supp.2d 305, 320 (W.D.N.Y. 2004) ("Although all of the shots may be described as having been fired during the course of a single extended criminal transaction, there clearly were three separate acts that resulted in the deaths of Ibezime and Gross and the injury of Cartledge."); People v. Boone, 30 A.D.3d 535, 536, 816 N.Y.S.2d 570, 572 (2d Dep't 2006) ("Furthermore, the imposition of consecutive terms of imprisonment for the defendant's conviction of two counts of attempted murder in the second degree was permissible because the firing of multiple shots at the two victims constituted separate and distinct acts.").

### 4. As to the Cumulative Effect of All of the Alleged Errors

The petitioner's final ground raised in support of his petition is that the cumulative effect of the alleged errors discussed above deprived him of a fair trial. This claim is procedurally defaulted, because the petitioner did not raised this claim in any of his state court proceedings.  See Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006).

On the merits, the claim is groundless.  The Court has determined that (1) the plaintiff's counsel was not ineffective; (2) evidence that the petitioner made a threat to Craig Cohn was not plainly inadmissible; and (3) the trial court acted within its

discretion imposing consecutive prison terms on the petitioner. Thus, "the cumulative effect" of these alleged errors does not arise to a deprivation of a fair trial.

III.    CONCLUSION

For the reasons stated above, the petition of Rajin Charles for a writ of habeas corpus is denied. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c)(2), a certificate of appealability is denied, as the petitioner failed to make a substantial showing of a denial of a constitutional right. <u>Miller-El v. Cockrell</u>, 537 U.S. 332, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003).

The Clerk of the Court is directed to close this case.

**SO ORDERED**.

Dated:  Central Islip, New York
        September 27, 2007

                                        _/s/ Arthur D. Spatt_
                                        ARTHUR D. SPATT
                                        United States District Judge